UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTRUIS GROUP, LLC,<br><br>　　　　Plaintiff,<br><br>-vs-<br><br>PROSIGHT SPECIALTY<br>MANAGEMENT COMPANY, INC.,<br>NEW YORK MARINE AND<br>GENERAL INSURANCE COMPANY<br>and GOTHAM INSURANCE<br>COMPANY,<br><br>　　　　Defendants. | Civil Action No.: 1:21-cv-10757-MKV |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Steven M. Lucks
S. Aaron Loterstein
FISHKIN LUCKS LLP
500 7th Ave, 8th Floor
New York, New York 10018
(646) 755-9200
slucks@fishkinlucks.com
aloterstein@fishkinlucks.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ALLEGATIONS IN COMPLAINT ........................................................................................... 2

LEGAL ARGUMENT .................................................................................................................. 5

    I.      Altruis's Implied Covenant Claim Must Be Dismissed.......................................... 5

           A.      Altruis Cannot Maintain an Implied Covenant Claim Based on the Same Facts and Seeking the Same Relief as its Breach of Contract Claim................................................................................................................ 6

           B.      A Breach of Contract—Even in Bad Faith—Is Still Just a Breach of Contract ................................................................................................. 7

    II.     Altruis's GBL § 349 Claim Must Be Dismissed ...................................................... 8

           A.      Altruis's GBL § 349 Claim Is Nothing More than a Private Contract Dispute ................................................................................................... 9

           B.      Altruis's GBL § 349 Does Not Allege a Loss Independent of the Loss Caused by Defendants' Alleged Breach of Contract........................ 10

    III.    Altruis's Declaratory Judgment Claim Must Be Dismissed................................. 10

CONCLUSION............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alter v. Bogoricin*,
  1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) .................................................................................. 6

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*,
  70 A.D.3d 423 (1st Dep't 2010) ................................................................................................... 6

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
  937 F. Supp. 2d 355 (E.D.N.Y. 2013) ......................................................................................... 7

*Canstar v. J.A. Jones Const. Co.*,
  212 A.D.2d 452 (1st Dep't 1995) ................................................................................................. 6

*Cont'l Cas. Co. v. Nationwide Indem. Co.*,
  16 A.D.3d 353 (1st Dep't 2005) ................................................................................................... 9

*Deer Park Enterprises, LLC v. Ail Sys., Inc.*,
  57 A.D.3d 711 (2d Dep't 2008) ................................................................................................... 6

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
  309 F. Supp. 3d 89 (S.D.N.Y. 2018) ................................................................................ 6, 8, 10

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
  754 F.3d 136 (2d Cir. 2014) ......................................................................................................... 9

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) ........................................................................................................... 6

*In re Cablevision Consumer Litig.*,
  864 F. Supp. 2d 258 (E.D.N.Y. 2012) ....................................................................................... 10

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
  507 F. Supp. 3d 490 (S.D.N.Y. 2020) ...................................................................................... 7, 8

*Nials v. Bank of Am.*,
  2014 WL 2465289 (S.D.N.Y. May 30, 2014) ............................................................................. 9

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ..................................................................................................................... 9

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) ......................................................................................................... 10

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*,
    186 F. Supp. 3d 257 (E.D.N.Y. 2016) ............................................................................... 7

*Transcience Corp. v. Big Time Toys, LLC*,
    50 F. Supp. 3d 441 (S.D.N.Y. 2014) ................................................................................. 7

**Statutes**

New York General Business Law § 349 ................................................................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

**PRELIMINARY STATEMENT**

This case concerns a private contract dispute between plaintiff Altruis Group, LLC and defendants ProSight Specialty Management Company, Inc. dba Coaction Specialty Management Company, Inc., New York Marine and General Insurance Company, and Gotham Insurance Company (collectively, "Defendants"). Defendants and Altruis entered into a contract, referred to as the Niche Management Agreement ("NMA"), which obligated Altruis to provide insurance administration services for Defendants in exchange for a percentage of commissions.

When Altruis breached the NMA by failing to perform the minimum services required, Defendants terminated the agreement on fifteen days' notice (as required by the NMA) and refused to pay Altruis commissions that Altruis claims it had earned. Altruis claims that Defendants' termination of the NMA and refusal to pay commissions is itself a breach of the NMA. Although Defendants contest that claim, that battle is not appropriate for a Rule 12(b)(6) motion to dismiss and must wait for another day. For now, however, Defendants seek dismissal of Altruis's duplicative and deficient claims for breach of the implied covenant of good faith and fair dealing, violation of New York General Business Law § 349, and for declaratory judgment.

First, Altruis's implied covenant claim must be dismissed because it arises from the same facts and seeks the same relief as its breach of contract claim. And while Altruis alleges that Defendants acted in bad faith and had improper motives in breaching the NMA, that does not transform an ordinary breach of an express contract into an implied covenant claim. Altruis has likewise failed to state a GBL § 349 claim, as the dispute concerns a private, one-off contractual arrangement, rather than the broad consumer-oriented conduct to which GBL § 349 applies. Moreover, Altruis has failed to state a GBL § 349 claim because it does not allege a monetary loss independent of the loss caused by Defendants' alleged breach of contract. Finally, Altruis fails to

state a declaratory judgment claim, as its breach of contract claim will necessarily settle the issues for which the declaratory judgment is sought.

## ALLEGATIONS IN COMPLAINT[1]

Defendants New York Marine and Gotham are property and casualty insurance companies, serviced by defendant ProSight. *See* SAC ¶¶ 5-7, 19. One segment of Defendants' business is the captive insurance market.[2]

Altruis is an insurance brokerage founded in 2020 by former ProSight CEO Joseph J. Beneducci, Sr. *Id.* ¶ 16-17. In January 2020, the parties executed the NMA, creating a framework under which the parties could agree "from time to time" that Altruis would provide for Defendants' individual captive insurance clients "any or all" of certain enumerated duties, in exchange for compensation that would "be separately agreed by the parties" for each captive insurance transaction. ECF No. 28-1 § 2(A); § 6(A); § 14(A). The original NMA did not identify any specific captive insurance clients for which Altruis would provide services, the services it would provide, or the specific commissions that Altruis would earn. *See generally* ECF No. 28-1.

In May 2020, the parties amended the NMA. *See* ECF No. 28-2 (the "NMA Amendment"). The NMA Amendment identified "Minimum Services" that Altruis was required to perform for Defendants' captive insurance business (there have never been more than eight captive clients) and set forth a commission schedule that Defendants agreed to pay to Altruis in exchange for Altruis's performance of the Minimum Services. *Id.* § 2; SAC ¶ 25.

Section 21 of the NMA authorizes either party to terminate the NMA upon immediate notice

---

[1] Defendants accept as true the factual allegations in the second amended complaint, ECF No. 28 ("SAC") for purpose of this motion.

[2] Although not necessary for resolution of this motion, Defendants offer for the Court's benefit a brief description of the captive insurance space. A captive insurance company is "a wholly-owned subsidiary insurer that provides risk-mitigation services for its parent company or a group of related companies." https://www.investopedia.com/terms/c/captive-insurance-company.asp, last accessed March 14, 2022.

2

after "a material breach of any provision of [the NMA] by [the other party] not cured within fifteen (15) days from written notice." ECF No. 28-1 § 21(A); § 21(C). The NMA provides that where either party terminates because of a material breach, that party retains the rights to certain intellectual property. *Id.* §22(A)-(C).

In October 2021, Defendants raised concerns about Altruis's performance and entitlement to commissions under the NMA. *Id.* ¶ 35. Altruis insisted—and continues to insist—that it is entitled to $2.3 million in commissions under the NMA. *Id.* ¶¶ 38-39.

On November 15, 2021, Defendants wrote to Altruis, advising that they were terminating the NMA based on Altruis's material breach in "its failure to provide the Minimum Services, as defined and required under the May 2020 Amendment." ECF No. 28-3. Defendants listed the specific services that Altruis had failed to perform and informed Altruis that the NMA would terminate effective November 30, 2021. *Id.* Altruis responded, claiming it had performed its obligations under the NMA and that Defendants' termination of the NMA was itself a breach of the parties' agreement. SAC ¶ 44. Defendants did not withdraw their termination of the NMA, and the agreement terminated on November 30, 2021. SAC ¶ 47.

Altruis commenced this action on December 16, 2021, and filed the SAC on March 1, 2022.[3] Altruis asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of GBL § 349, and for a declaratory judgment that the NMA "either remains in full force and effect and that no material breach exists by [Altruis] thereby excusing the Defendants

---

[3] Altruis amended the original complaint in response to the Court's order requiring it to include information about its underlying members to assess whether diversity jurisdiction exists. *See* ECF No. 11. Defendants filed a letter requesting a pre-motion conference on Defendants' anticipated motion for partial dismissal against the first amended complaint. ECF No. 24. The Court granted Defendants leave to move to dismiss, ordering Altruis to advise whether it intended to amend its complaint in response to Defendants' anticipated arguments. ECF No. 27. The Court cautioned that this would be Altruis's "last opportunity to amend the complaint in response to arguments raised in the parties' letters." *Id.* Altruis then filed the SAC.

from the ongoing performance of all of its obligations under the [NMA], including its obligation to make timely payment of all commissions due and owing, and all commissions to become due through the remaining term of the [NMA] or Defendants have materially breached the [NMA] and pursuant to Section 22.C of the [NMA], Altruis retains all rights, title to, and interest in the Captive Capabilities Niche Intellectual Property." *Id.*

For its breach of contract claim (which Defendants do not seek to dismiss at this time), Altruis alleges that Defendants breached the NMA "by refusing to make commission payments which are due and owing to [Altruis]" and by "improperly and unlawfully seeking to terminate the [NMA] without providing [Altruis] the opportunity to cure as called for under Section 21.B.3 of the [NMA]." SAC ¶¶ 51-52. Altruis seeks "at least $2.3 million" in damages for its breach of contract claim, which it alleges are the commissions it is owed under the NMA. *Id.* ¶ 53.

Altruis's implied covenant claim mirrors its breach of contract claim. It alleges that "solely to avoid paying the commissions due and owing to [Altruis]," Defendants "improperly and unlawfully sought to invoke Section 21.B.3 of the [NMA] without specifically identifying a purported material breach of the [NMA] . . . merely as a pretext for a unilateral modification and early termination of the [NMA] now that they have decided to exit the captive insurance business." *Id.* ¶ 56. According to Altruis, despite acknowledgments by Defendants' representatives that Altruis performed under the NMA, and even though Defendants paid Altruis its commissions for 2020, Defendants "concocted a completely false narrative regarding alleged failures on the part of Altruis in its performance under the [NMA]" as "a purported justification" for terminating the NMA and refusing to pay commissions for 2021. *Id.* ¶¶ 57, 59, 61, 65. Altruis alleges that ProSight "seek[s] to take advantage" of Mr. Beneducci's illness by delaying and "hoping to escape their obligation" to

4

pay commissions. *Id.* ¶ 58.[4] Altruis further alleges that by refusing to provide the basis for their contention that Altruis has breached the NMA, Defendants deprived Altruis of the opportunity to cure. *Id.* ¶ 62. According to Altruis, Defendants' conduct "amounts to bad faith and constitutes a breach of the covenant of good faith and fair dealing for which the Defendants should be punished." *Id.* ¶ 66. Altruis seeks at least $2.3 million in damages for this claim, which it alleges are the commissions owed under the NMA. *Id.* ¶¶ 71, 74.

For its GBL § 349 claim, Altruis contends that "Defendants' bad faith refusal" to perform under the NMA by "failing to pay duly owed commissions . . . , improperly seeking to terminate the [NMA] in an effort to avoid paying such commissions, and failing to provide [Altruis] with an opportunity to cure any alleged breach" is a "deceptive act or practice of a recurring nature, and is harmful to the public at large." *Id.* ¶ 76.

Finally, Altruis seeks a declaration that Defendants have breached the NMA, which it claims is necessary "with respect to all rights, title to, and interest in the [intellectual property] as defined in the [NMA] as the resolution of other claims at issue in this action may not resolve the rightful entitlement to said Intellectual Property." *Id.* ¶¶ 80, 84.

## LEGAL ARGUMENT

**I.     Altruis's Implied Covenant Claim Must Be Dismissed**

Altruis's breach of contract and implied covenant claims rest on identical factual allegations and seek identical relief. The implied covenant claim is therefore duplicative, and New York law mandates that it be dismissed.

---

[4] The NMA is between Defendants and Altruis (rather than Mr. Beneducci individually). It is therefore unclear why Altruis thinks Defendants believe they could "escape their obligations" or somehow benefit if Mr. Beneducci were to pass away. Instead, Altruis only invokes Mr. Beneducci's medical condition to invoke sympathy.

### A. Altruis Cannot Maintain an Implied Covenant Claim Based on the Same Facts and Seeking the Same Relief as its Breach of Contract Claim

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). For that reason, an implied covenant claim "can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018).

New York courts routinely dismiss implied covenant claims as duplicative of breach of contract claims where both claims arise from the same facts and seek the identical damages for each alleged breach. *See, e.g.*, *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 426 (1st Dep't 2010) (dismissing implied covenant claim as duplicative); *Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2008) ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'") (quoting *Canstar v. J.A. Jones Const. Co.*, 212 A.D.2d 452, 453 (1st Dep't 1995)); *see also Alter v. Bogoricin*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative.").

Altruis's breach of contract and implied covenant claims arise from the same set of facts and seek identical damages. Both claims are based on Defendants' refusal to pay commission and allegedly unlawful termination of the NMA without providing Altruis the opportunity to cure.

6

*Compare* SAC ¶¶ 51-52 (allegations supporting breach of contract claim), *with id.* ¶¶ 56-62 (allegations supporting implied covenant claim). Through both claims, Altruis seeks to recover $2.3 million in commissions that Altruis contends are owed under the NMA. *Id.* ¶¶ 53, 71, 74.

### B. A Breach of Contract—Even in Bad Faith—Is Still Just a Breach of Contract

Hoping to make its implied covenant claim seem distinct from its breach of contract claim, Altruis asserts allegations regarding Defendants' motivation in allegedly breaching the NMA (including taking advantage of Mr. Beneducci's health issues) and its conduct leading up to the alleged breach (including paying commissions for 2020). But a breach is just a breach, regardless of whether it was committed in good faith or bad. *See Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016) ("[B]ad faith in connection with a breach of contract claim does not provide an independent basis for recovery."); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014) (dismissing as duplicative implied covenant claim where plaintiff had alleged that defendant breached the contract in bad faith); *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) ("[P]laintiff may allege bad faith as part of its contract claim, but bad faith does not provide an independent basis for recovery.").

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490 (S.D.N.Y. 2020), is illustrative. There, the plaintiff painting owner asserted breach of contract and implied covenant claims against an auction house in connection with its termination of an agreement to auction off the plaintiff's painting. The plaintiff alleged—much like Altruis does here— that the defendant "schemed to terminate the [agreement] for its own financial benefit, and not because of the COVID-19 pandemic" as the defendant had claimed. *Id.* at 505. The court rejected this as an independent basis for an implied covenant claim, explaining that a claim defendant "pretextually canceled the [agreement] . . . is not distinct from the argument that [defendant] had an obligation to

7

perform under the [agreement,] and that "the damages that [plaintiff] seeks for this claim are identical to those it seeks for its breach-of-contract claims." *Id.* As in *JN Contemporary Art*, it is irrelevant that Altruis bases its implied covenant claim on the allegation that Defendants' stated grounds for terminating the NMA were merely pretextual. Either way, the claim is simply that Defendants breached the NMA.

Similarly, in *EFG Bank AG*, 309 F. Supp. 3d at 93, the court dismissed as duplicative the plaintiffs' implied covenant claims, despite an allegation unique to that claim that the defendant had refused to provide documents supporting the grounds for its alleged breach. The court found that the "[t]he gravamen of" both the breach of contract and implied covenant claims was that the defendant insurance company had increased cost of insurance rates for reason other than those permitted under the parties' insurance contract. And while the plaintiff had included an additional allegation in support of its implied covenant claim—that the defendant had failed to provide the documents that it contends supported its bases for raising the rates—that was insufficient to salvage the implied covenant claim, as the relief plaintiffs sought was "intrinsically tied to the damages allegedly resulting from the breach of contract." *Id.* at 94.

Because the gravamen of Altruis's breach of contract and implied covenant claims is identical, and because Altruis seeks identical relief arising from the identical contractual term in support of both claims, the implied covenant claim must be dismissed as duplicative.

## II.     Altruis's GBL § 349 Claim Must Be Dismissed

Altruis's GBL § 349 claim must be dismissed for at least two reasons. First, this is a private contract dispute, rather than the broad consumer-oriented conduct to which GBL § 349 applies. Second, the GBL § 349 claim does not allege monetary loss independent of the claimed losses caused by Defendants' alleged breach of contract.

**A. Altruis's GBL § 349 Claim Is Nothing More than a Private Contract Dispute**

As New York's Court of Appeals has made clear, "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) ("Typically, private contract disputes cannot form the basis of a § 349 claim. A plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large."). For that reason, New York state and federal courts routinely dismiss GBL § 349 claims alleging private contract disputes. *See, e.g., Cont'l Cas. Co. v. Nationwide Indem. Co.*, 16 A.D.3d 353, 354 (1st Dep't 2005) (affirming dismissal of GBL § 349 counterclaim brought by insurance claimants against insurance companies where the "allegations, liberally construed, at best show a private contract dispute over policy coverage and the processing of defendants' claims, not conduct affecting the consuming public at large, and thus do not state a cause of action under § 349"); *Nials v. Bank of Am.*, 2014 WL 2465289, at *3 (S.D.N.Y. May 30, 2014) (dismissing § 349 claim because the lawsuit "concerned a private dispute between Plaintiffs and Defendants as to the title of a particular piece of property and mortgages and notes relevant to only the parties of this litigation").

Altruis bases its GBL § 349 claim on Defendants' alleged "bad faith refusal to adhere to its obligations under the [NMA]," including by refusing to pay commissions and terminating the NMA without providing an opportunity to cure. SAC ¶ 76. The NMA is a private contract involving specialized companies in a niche insurance market. Altruis cannot transform this contract dispute into a viable GBL § 349 claim through its bare allegation that Defendants' alleged breach "was and is a deceptive act or practice of a recurring nature, and is harmful to the public at large." *Id.* Dismissal of that count is therefore warranted.

### B. Altruis's GBL § 349 Does Not Allege a Loss Independent of the Loss Caused by Defendants' Alleged Breach of Contract

Moreover, Altruis's GBL § 349 claim must be dismissed because Altruis has not alleged "injury flowing from the alleged deception beyond what is covered by [its] breach of contract claim." *See In re Cablevision Consumer Litig.*, 864 F. Supp. 2d 258, 267 (E.D.N.Y. 2012) (dismissing § 349 claim seeking recovery of rebate to which plaintiffs claimed they were contractually entitled, which was "insufficient to state a Section 349 claim that is independent from Plaintiffs' breach of contract claim"); *see also Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) ("Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract."). Altruis bases its GBL § 349 claim on Defendants' refusal to pay commissions, *see* SAC ¶ 76, the very relief Altruis seeks to recover through its breach of contract claim. Because it does not allege any independent loss, Altruis's GBL § 349 claim must be dismissed.

### III. Altruis's Declaratory Judgment Claim Must Be Dismissed

Finally, Altruis's claim under the Declaratory Judgment Act must be dismissed as it is duplicative of Altruis's breach of contract claim.

"Courts generally reject a DJA claim when other claims in the suit will resolve the same issues." *EFG Bank AG*, 309 F. Supp. 3d at 98–100 (collecting cases). Here, Altruis claims that a declaration is necessary "with respect to all rights, title to, and interest in the [intellectual property] as defined in the [NMA] as the resolution of other claims at issue in this action may not resolve the rightful entitlement to said Intellectual Property." SAC ¶ 80. But regardless of how the Court rules, Altruis's "contract claim[] will necessarily settle the issues for which the declaratory judgment is sought, meaning that the DJA claim will serve no useful purpose." *EFG Bank AG*, 309 F. Supp. 3d at 100 (internal quotations and citations omitted). This is because under the

NMA's provisions regarding the intellectual property at issue, where a party terminates for breach, the intellectual property follows the terminating party.  *See* ECF No. 28-1 § 22(B)-(C).[5]  Thus, were the Court to ultimately find in Altruis's favor on its breach of contract claim, it would necessarily follow that Altruis retains the rights to the intellectual property.  Accordingly, the claim for a declaration adds nothing and must be dismissed.

## CONCLUSION

For these reasons, Defendants respectfully submit that Altruis's claims for breach of the implied covenant of good faith and fair dealing, violation of GBL § 349, and for a declaratory judgment be dismissed, with prejudice.

Dated: New York, New York
March 15, 2022

Respectfully submitted,

*/s/ S. Aaron Loterstein*
Steven M. Lucks
S. Aaron Loterstein
FISHKIN LUCKS LLP
500 7th Ave, 8th Floor
New York, New York 10018
(646) 755-9200
slucks@fishkinlucks.com
aloterstein@fishkinlucks.com

*Attorneys for Defendants*

---

[5] Under § 22(B), if Defendants terminate under § 21(B)(3) (the term under which Defendants terminated the NMA), Defendants retain all rights, title to, and interest in the intellectual property.  If, on the other hand, Altruis terminates the NMA because of a breach by Defendants, § 22(C) provides that Altruis retains the rights, title to, and interest in the intellectual property.