UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTRUIS GROUP, LLC,<br><br>                         Plaintiff,<br><br>-vs-<br><br>PROSIGHT SPECIALTY MANAGEMENT<br>COMPANY, INC., NEW YORK MARINE AND<br>GENERAL INSURANCE COMPANY and<br>GOTHAM INSURANCE COMPANY,<br><br>                         Defendants. | CIVIL ACTION NO.:<br><br>1:21-cv-10757 |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Anthony M. Tessitore, Esq. (AT3804)
Timothy M. Jabbour, Esq.
TRESSLER LLP
163 Madison Avenue, Suite 404
Morristown, New Jersey 07960
Tel: (973) 848-2901
atessitore@tresslerllp.com
tjabbour@tresslerllp.com

*Attorneys for Plaintiff, Altruis Group, LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ................................. 4

LEGAL ARGUMENT............................................................................................... 7

     I.      Altruis' Implied Covenant Claim is meritorious, based on facts independent of Plaintiff's Breach of Contract claim, and should not be dismissed at the initial pleadings stage........................................................................................ 7

     II.     Defendants' motion with respect to Altruis' GBL §349 claim must be denied.... 11

     III.    Plaintiffs Declaratory Judgment Claim is Necessary to a Final Resolution of the Dispute between these Parties ................................................................ 13

CONCLUSION...................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*1-10 Industry Associates, LLC v. Trim Corp. of America,*
    747 N.Y.S.2d 29, 31, 297 A.D.2d 630, 631 (2d Dep't 2002).............................................. 7

*511 West 232nd Owners Corp. v. Jennifer Realty Co.,*
     98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135, 773 N.E.2d 496, 500 (2002)..................... 7

*Amusement Indus., Inc.,*
    693 F.Supp.2d at 311 ..................................................................................................... 13

*Dalton v. Educational Testing Service,*
    87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289, 291 (1995)...................... 7

*Deutsche Bank Sec. Inc. v. Rhodes,*
    578 F.Supp.2d 652, 664 (S.D.N.Y. 2008) ........................................................................ 7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
    411 F.3d 384, 389 (2d Cir. 2005)................................................................................... 13

Goshen v. Mutual Life Ins. Co. of N.Y.,
    98 N.Y.2d 314, 324 n.1 (2002) ..................................................................................... 11

*Grad v. Roberts,*
    14 N.Y.2d 70, 75, 198 N.E.2d 26, 28, 248 N.Y.S.2d 633, 637 (1964).............................. 7

*Great Am. Ins. Co. v. Houston General Ins. Co.,*
    735 F.Supp. 581, 585 (S.D.N.Y.1990)............................................................................ 13

*Karlin v. IVF Am.,*
    93 NY2d 282, 290 (1990) ........................................................................................ 11, 12

*Kaszirer v Kaszirer,*
    298 AD2d 109, (2002) ................................................................................................... 9

Koch v. Acker, Merrall & Condit Co.,
    18 N.Y.3d 940, 941 (2012) ........................................................................................... 11

*Lass v. Bank of Am.,*
    695 F.3d 129, 138 (1st Cir.2012).................................................................................. 10

*Merzon v Lefkowitz,*
    289 AD2d 142, 143 (2001) ............................................................................................. 9

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
    85 N.Y.2d 20, 25 (1995) ............................................................................................... 11

*Polotti v. Flemming,*
    277 F.2d 864, 868 (2d Cir.1960)........................................................................... 9

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47, 52 (2d Cir. 1992)........................................................................... 12

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.,*
    41 F.3d 1570, 1577 (2d Cir.1994)........................................................................ 9

*Truetox Labs., LLC v Healthfirst PHSP, Inc.*
    (2020 NY Slip Op 50900(U)............................................................................... 8

## PRELIMINARY STATEMENT

Defendants bring this partial motion to dismiss seeking dismissal of all claims in this action except for Plaintiff's claim for breach of contract. However, the claims which Defendants seek to dismiss are all well founded and there is no basis for dismissal, particularly at the initial pleadings stage. As Defendants note, these parties entered into a contract, referred to as the Niche Management Agreement ("NMA"), under which Altruis was to provide insurance administration services for Defendants in exchange for a percentage of commissions based upon the Gross Written Premium received by the Defendants in connection with their captive insurance program. However, the manner in which Defendants have treated Plaintiff Altruis in connection with its business dealings under the NMA, separate and distinct from the clear and straightforward breach of contract, has been nothing short of loathsome and gives rise to Plaintiff's claims in bad faith.

Plaintiff provides the following by way of background for the Court to fully appreciate the nature of this dispute and the extent to which Defendants are in breach of their contractual obligations and have acted in bad faith. In 2010, Joe Beneducci, Sr., founded ProSight Specialty Insurance Group. As Executive Chairman, Mr. Beneducci led the public offering for ProSight as a publicly traded entity in 2019. In February 2020, Mr. Beneducci transitioned and left his role as Executive Chairman at ProSight to create a new, privately owned, insurance brokerage, Altruis Group.  In December 2020, Mr. Beneducci was diagnosed with a rare and terminal Glioblastoma brain tumor. Motivated by a sense of loyalty to the Company he founded, Mr. Beneducci drafted, negotiated and agreed to the NMA which defined a working partnership between Altruis and ProSight aimed at supporting and bolstering ProSight's presence in the Captives business. Notwithstanding his dire health, Mr. Beneducci committed to help ProSight even after his departure when it would have been very easy for Mr. Beneducci to part ways completely.

1

During the first year of the NMA, it is undisputed that all required services and support were provided by Altruis Group with a commission payment for services rendered (based upon $24,673,550 of Gross Written Premium) paid to Altruis Group by ProSight, without hesitation, in February 2021.

In August 2021, ProSight was sold to a privately held company. Shortly following the sale, it quickly became clear that the new owners of ProSight were uncertain of what to do with the Captive insurance business that was included in the ProSight acquisition. Senior leadership of ProSight was aware of Mr. Beneducci's terminal medical condition in 2021 with written confirmation of such knowledge in November of 2021. Thereafter, ProSight decided to complete its own assessment of its Captive business immediately after their official acquisition was completed in August 2021. Upon completing their assessment, ProSight decided to exit the Captive business with notices sent to clients on October 29, 2021 without notice to Altruis, its business partner, regarding that decision. ProSight failed to provide notice to Altruis of its intent to exit the Captive insurance business as required by the NMA.  Moreover, following its decision to exit the Captive business, and notwithstanding Altruis having provided all required services on accounts totaling over $47,000,000 in Gross Premium Written during 2021, ProSight, in a purposeful and clandestine scheme, sought to evade its obligations under the NMA and terminate its business relationship with Altruis.  To date, no payment has been made by ProSight to Altruis Group for any and all services Altruis Group provided for 2021 on a book of business that nearly doubled in size from the prior year term. Moreover, no payment has been made to Altruis for the services provided for the 2021 term of the NMA notwithstanding the fact that Altruis was fully and timely compensated by ProSight for services provided during 2020 on the same basis that Altruis is owed payment now.

With these basic facts as a backdrop, it is eminently clear that Defendants have acted in bad faith in their dealings with Plaintiff as alleged in the Second Amended Complaint. Contrary to Defendants' suggestion, Plaintiff's claim for the breach of the Implied Covenant of Good Faith and Fair Dealing is based on allegations *separate and distinct* from those underlying its breach of contract claim. Plaintiff has alleged facts in support of its implied covenant claim that go above and beyond the allegations supporting its breach of contract claim and if proven to be true, will warrant the consequential and punitive damages associated with that claim. Not only have Defendants breached their obligations to Plaintiff by failing to make commission payments for Plaintiffs' services but Defendants have acted with false pretense and improper motive seeking to take advantage of the medical condition of Joe Beneducci, Sr., the founder and former Chief Executive Officer of ProSight. Defendants acted with malice intent and motive in order to avoid payment to Altruis and terminate the business relationship given ProSight's decision to exit the Captive insurance space.

As a further sign of their improper motives, Defendants ignored their own past precedent with respect to payment of commissions under the NMA and instead manufactured a myriad of excuses purporting to justify Defendants' improper termination of the NMA. Through its bad faith unflawful termination of the NMA, ProSight also attempts an improper seizure of the intellectual property rights of the Captive business in addition to refusing to pay the commissions owed, all the while enjoying the benefits of ProSight having serviced $47,000,000 in Gross Written Premium. Furthermore, Defendants' unabashed failure to provide Plaintiff's with its bargained for right to cure any alleged deficiencies in its performance speaks volumes as to Defendants' bad faith conduct and gives rise to Plaintiff's bad faith claims as alleged in the Second Amended Complaint.

3

Moreover, Plaintiffs should be permitted to continue to pursue their claim for relief under New York General Business Law §349 and under the Declaratory Judgment Act. The Defendants, whose business is focused on selling commercial insurance products to the public, must be held accountable for engaging in deliberately deceptive and misleading conduct in connection with managing their contractual obligations to their partners. GBL §349 provides Plaintiff with a private right of action to hold Defendants accountable for those deceptive acts and practices. Further, Plaintiff's breach of contract claim may not resolve rights to intellectual property emanating from these parties' business relationship. Given same, Plaintiff's claim under the Declaratory Judgment Act must be permitted to continue to ensure a full and final resolution of the disputes between these parties.

## ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiff is constrained to respond to Defendants' misplaced comments regarding the allegations contained in Plaintiff's Second Amended Complaint. Defendants distort the allegations and the relationship between these parties in an effort to justify ProSight's egregious conduct. Initially, Defendants suggest that the NMA created a loose framework of a business relationship between the parties such that Plaintiff would, from time to time, provide services for Defendants' Captive insurance clients. The document, however, speaks for itself as does the actions of all parties in carrying out or failing to carry out their obligations under the NMA. This was not a casual, informal relationship as Defendants might suggest. Instead, Plaintiffs worked diligently in supporting ProSight and providing all required services on a book of business that doubled in size over a two year-period.

Further, Defendants conveniently fail to mention that the commission schedule included in the NMA Amendment is expressly based on the Gross Written Premium serviced by Altruis. That schedule is included below for further reference.

4

| GROSS COLLECTED PREMIUMS | PERCENTAGE COMMISSION |
|---|---|
| First $5,000,000 | 8% |
| For $5,000,000 - $10,000,000 | 7% |
| For $10,000,000 - $15,000,000 | 6% |
| For $15,000,000 - $20,000,000 | 5% |
| For $20,000,000 - $40,000,000 | 4% |
| For $40,000,000 - $60,000,000 | 3% |
| For $60,000,000 - $80,000,000 | 2% |
| Greater than $80,000,000 | 1% |

*See* ECF No. 28-2;; SAC ¶ 25.

As compensation for its services and expenses during the first year of the NMA, Plaintiff was paid $1,486,942 based on the Gross collected premium of $24,673,550, per the May 4, 2020 Addendum to the NMA which amount was paid in full without reservation on February 8, 2021. In year two of the NMA, Altruis provided all required services without fail on $47,000,000 in Premium Written, nearly double the written premium from the prior year. Notwithstanding that fact, Defendants concocted an illicit scheme, based in part on taking advantage of Mr. Beneducci's terminal illness, to terminate the business relationship and avoid its obligations under the NMA. The unlawful actions of the Defendants, which scream bad faith, are evidenced by Defendants having compensated the Plaintiff exactly **$0** for providing all required services in support of the $47,000,000 in 2021 Gross Premium Written. These are allegations, and soon to be proven facts, that Defendants would like this Court to simply overlook.

Defendants note that in October 2021 Defendants raised concerns about Altruis' performance under the NMA. The reality is that on October 27, 2021, nearly ten (10) full months into the second calendar year term of the NMA, ProSight suggested, for the first time, that it had "questions" about the amount of commission to be paid to Plaintiff for services rendered during 2021 which clearly demonstrated that the new owners of ProSight were seeking to avoid a clear and unavoidable obligation to Altruis. Nineteen (19) days later, after providing no specifics as to

the alleged shortcomings of Altruis' performance and providing no time for Plaintiff to cure any alleged deficiencies, ProSight compounded its wrongful conduct by sending correspondence to Plaintiff purporting to terminate the NMA based on an alleged material breach of the NMA by Plaintiff.  Plaintiff has clearly outlined and alleged bad faith conduct separate and district from the simple breach of contract, which if proven true, will warrant the imposition of consequential and/or punitive damages, above and beyond the commissions Plaintiff rightfully earned under the NMA.

## LEGAL ARGUMENT

I. **Altruis' Implied Covenant Claim is meritorious, based on facts independent of Plaintiff's Breach of Contract claim, and should not be dismissed at the initial pleadings stage**

Defendants argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because said claim is based on the same factual allegations and seeks the same relief as Plaintiff's breach of contract claim. Defendants' contentions in this regard are inaccurate and misplaced. In short, Plaintiff's implied covenant claim is not duplicative of its express breach of contract claim and dismissal of this claim at the pleadings stage would be improper.

Under New York law, a covenant of good faith and fair dealing is implied in all contracts. *1-10 Industry Associates, LLC v. Trim Corp. of America,* 747 N.Y.S.2d 29, 31, 297 A.D.2d 630, 631 (2d Dep't 2002). The covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135, 773 N.E.2d 496, 500 (2002) (citations and internal quotation marks omitted). Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion. *Dalton v. Educational Testing Service,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289, 291 (1995) (citation omitted). The covenant includes "an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." *Grad v. Roberts,* 14 N.Y.2d 70, 75, 198 N.E.2d 26, 28, 248 N.Y.S.2d 633, 637 (1964).

A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim. *Deutsche Bank Sec. Inc. v. Rhodes,* 578 F.Supp.2d 652, 664 (S.D.N.Y. 2008). Where a

7

claim for a breach of the obligation of good faith and fair dealing is supported by facts beyond those facts offered in support of a breach of contract claim, that claim will not be dismissed at the pleadings stage. *Truetox Labs., LLC v Healthfirst PHSP, Inc.* (2020 NY Slip Op 50900(U) (holding that because Plaintiff had alleged that Defendants had provided inconsistent reasons for its denial of payment and where Plaintiffs alleged that Defendants created a false pretext to avoid payments to which Plaintiff was entitled, same was sufficient to make out a claim for breach of the implied covenant of good faith and fair dealing.)

Here, Plaintiff has detailed the allegations in support of its breach of contract claim, namely that Defendants have failed to pay commissions owed following Plaintiff's performance as required under the NMA. Plaintiff's implied covenant claim is, however, based on altogether different allegations. For one, Plaintiffs have alleged that ProSight made no direct effort to make Plaintiff aware of its intention to withdraw from the captive insurance business. Furthermore, Defendants as part of a concocted scheme by the new management of ProSight, and with knowledge of Mr. Beneducci's terminal illness, delayed raising any question as to the measure of Plaintiff's performance under the NMA for nearly ten (10) full months into year two of the contract. In addition, Defendants provided Plaintiff with no meaningful explanation or specifics of the eleventh hour alleged deficiencies with regard to Altruis' performance. Further, Defendants gave Plaintiff no opportunity to cure any alleged deficiencies, a right it bargained for and is entitled to under the NMA.

Defendants' conduct, implemented by new ownership team at ProSight, was purposeful and fraught with malice intent, aimed at frustrating Plaintiff's rights to enjoy the fruits of the contract it negotiated, and intended to take advantage of Mr. Beneducci's perilous health condition. While Plaintiff recognizes that a claim for breach of the implied covenant will be dismissed where the allegations supporting such a claim are duplicative of the conduct underlying a breach of

contract claim, the allegations supporting the independent claims in this matter are not redundant. Instead, these allegations are all separate and distinct from the allegations supporting Plaintiff's breach of contract claim and warrant a denial of Defendants' motion at this early pleadings stage.

Further, Defendants' conduct here was clearly motivated not by intentions grounded in good faith but instead by improper, malicious motive to frustrate Plaintiff's ability to enjoy the benefits of the contract. Under New York law, where a party to a contract acts with improper motive, that party will be found to have breached the implied covenant of good faith and fair dealing. *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1577 (2d Cir.1994) (finding, under New York law, that Airline breached implied covenant of good faith and fair dealing when its promotional efforts were not based on good faith business judgments but, rather, "improper motive"). Said another way, parties to a contract are required to act with good faith intentions and good faith connotes a state of mind motivated by proper motive. *Polotti v. Flemming,* 277 F.2d 864, 868 (2d Cir.1960). In the context of evaluating the viability of claims for the breach of the implied covenant of good faith and fair dealing, motive is an issue of intent generally left to the trier of fact. *Kaszirer v Kaszirer,* 298 AD2d 109, *(*2002); *Merzon v Lefkowitz,* 289 AD2d 142, 143 (2001). Thus, dismissal at the pleading stage is inappropriate.

Prior to the commissions due to Plaintiff coming owed, ProSight's new ownership team evidenced an intention to exit the Captive insurance business yet made no effort to directly notify Altruis, its business partner in this space. Moreover, ProSight's alleged scheme let Altruis perform its duties under the NMA for ten (10) months in 2021 before ProSight's new owners raised baseless concerns about Altruis' performance. Thereafter, ProSight abruptly and unlawfully attempted to terminate the contract giving no opportunity to Altruis to cure the baseless alleged deficiencies in Altruis' performance. Furthermore, given Mr. Beneducci's dire health condition, it has become apparent that as part of Defendants' measured plan, ProSight was looking to run out the clock

hoping to frustrate Plaintiff's rights to enjoy the benefits it was entitled to under the NMA and avoid payment to Altruis during Mr. Beneducci's lifetime. ProSight's new ownership has acted with improper motive since its acquisition of the company and its contemptuous conduct towards Altruis underscores Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

Additionally, Plaintiff notes that a claim for the breach of the implied covenant of good faith and fair dealing will not be dismissed at the pleading stage where the Claimant has stated a claim suggesting that the Defendant acted in bad faith and outside the reasonable expectations of the parties. *See, e.g., Lass v. Bank of Am.,* 695 F.3d 129, 138 (1st Cir.2012). Altruis has alleged that ProSight has acted in bad faith and that ProSight's conduct was outside the reasonable expectations of the parties here. This is especially so where the reasonable expectations of the parties was, in part, based on the parties performance during and in connection with the initial year of the NMA where ProSight promptly paid the commissions owed based on the Gross Premium Written without any hesitation. At a minimum, Plaintiff should be permitted to take discovery and proceed with its implied covenant claim so that a determination can be made whether ProSight's conduct was committed in bad faith and outside the reasonable expectations of the parties. Those determinations are questions of fact not to be determined at the pleadings stage.

Defendants wish this Honorable Court to misconstrue the allegations in the Second Amended Complaint arguing that a breach of contract in bad faith is still just a breach of contract claim and that bad faith alone does not support an independent right to recovery. Here, however, the separate and distinct allegations as to Defendants' bad faith conduct give rise to a separate claim for breach of the implied covenant of good faith and fair dealing. Plaintiff's claim for breach of the implied covenant claim should not be dismissed at this early initial pleadings stage and Plaintiff should be afforded the opportunity to pursue discovery in support of said claim.

## II.    <u>Defendants' motion with respect to Altruis' GBL §349 must be denied</u>

General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful" (General Business Law § 349 [a]). GBL§ 349 is intentionally broad, applying "to virtually all economic activity" *Karlin v. IVF Am.*, 93 NY2d 282, 290 (1990). The statute provides a private right of action to "any person who has been injured by reason of" such illegal conduct (*see* General Business Law § 349 [h]).

To state a claim under GBL §349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002). A plaintiff claiming the benefit of Section 349 must demonstrate that the acts or practices of Defendant have a broader impact on consumers at large. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).

It is undisputed that Defendants regularly engage in consumer-oriented conduct by issuing specialty insurance products in the public marketplace and that its relationship with Plaintiff is driven entirely by consumer based transactions involving its insurance contracts. Further, Altruis has alleged that it has been injured by Defendants' deceptive acts and practices. Defendants induced Plaintiff into performance only to improperly, and without justification, terminate the contract without cause, spurning its contractual obligations. Altruis relied on Defendants' past practices of making payments of commissions based on the formula included in the Amendment to the NMA. Defendants concocted a scheme and manufactured a false pretext to justify their cancellation of the NMA and avoid payment of commissions due and owed to Plaintiff.

The Defendants, whose business is focused on selling commercial insurance products to the public, resulting in similar contractual relationships, must be held accountable for engaging in deliberately deceptive and misleading conduct involving their contractual obligations and must be prevented from engaging in the same deceptive conduct with its other partners and its consumers/policyholders, who are in the public at large. There is significant risk that if this behavior is not curtailed, Defendants can and will feel the freedom to engage in the same kind of deceptive and misleading acts with the public at large, with whom it is regularly interfacing in connection with issuing specialty insurance products. Indeed, insurance companies are not outside the reach of GBL §349 claims. See, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992).

At this early pleadings stage, Plaintiff should be entitled to pursue discovery with respect to Defendants deceptive practices in support of its claim and to ensure that such deceptive practices are not extended to the public at large. While Plaintiffs recognize that §349 is generally directed to wrongs against the consuming public, the reach of the statute is exceedingly broad and applies to virtually all economic activity. *Karlin*, supra at 290. Defendants must be prevented from engaging in the same misleading behavior committed with Altruis with ProSight's other partners and policyholders. Plaintiff's prosecution of a claim under General Business Law §349 not only permits Plaintiff an appropriate alternate theory of recovery, but also serves to protect the public with whom the Defendants are regularly engaged through contractual relationships, by holding the Defendants responsible for their deceptive and misleading practices.

III.     **Plaintiffs Declaratory Judgment Claim is Necessary to a Final Resolution of the Dispute between these Parties**

Defendants argue that this Court should dismiss Plaintiff's Declaratory Judgment Act claim because Plaintiff's contract claim will necessarily settle the issues for which the declaratory judgment is sought. This is simply incorrect.

In deciding whether to entertain an action for declaratory judgment, a court is to consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Amusement Indus., Inc.,* 693 F.Supp.2d at 311 (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 411 F.3d 384, 389 (2d Cir. 2005). Furthermore, in determining whether to exercise jurisdiction over a declaratory judgment action, the court should examine the situation in its entirety. *Great Am. Ins. Co. v. Houston General Ins. Co.,* 735 F.Supp. 581, 585 (S.D.N.Y.1990)

Altruis submits that its Declaratory Judgement Claim is meritorious and necessary to reaching a final resolution of the disputes between these parties. In short, Plaintiff's breach of contract claim may not resolve rights to intellectual property emanating from these parties' business relationship. A determination in Plaintiff's favor on Plaintiff's breach of contract claim, may not resolve who has rights, title to and interest in the Captive Capabilities Niche Intellectual Property.  Furthermore, as Defendants have not answered Plaintiff's Second Amended Complaint, there remains the possibility that Defendants may seek a determination that they have a sole interest in the Captive Capabilities Niche Intellectual Property.

Generally, a decision as to an award of declaratory relief lies within the discretion of the district court.  Here, adjudication of Plaintiff's breach of contract claim may not result in a determination as to which party retains right, title to and interest in the Captive Capabilities Niche Intellectual

Property. The Declaratory Judgment claim must be permitted to resolve open questions now as to those Intellectual Property Rights so as to avoid future litigation between these parties.

### **CONCLUSION**

.

      For the reasons outlined herein, Defendants' partial motion to dismiss should be denied in its entirety and Plaintiff should be permitted to pursue each of its alleged claims for breach of the implied covenant of good faith and fair dealing, violation of GBL §349, and for declaratory judgment.

Dated:  March 28, 2022
        New York, New York

                      Respectfully submitted,

                      TRESSLER LLP

                      By: _____
                      Anthony M. Tessitore, Esq. (AT3804)
                      Timothy M. Jabbour, Esq.
                      163 Madison Avenue, Suite 404
                      Morristown, New Jersey 07960
                      Tel: (973) 848-2901
                      atessitore@tresslerllp.com
                      tjabbour@tresslerllp.com
                      *Attorneys for Plaintiff, Altruis Group, LLC*