UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALTRUIS GROUP, LLC,

          Plaintiff,

-vs-

PROSIGHT SPECIALTY
MANAGEMENT COMPANY, INC.,
NEW YORK MARINE AND
GENERAL INSURANCE COMPANY
and GOTHAM INSURANCE
COMPANY,

          Defendants.

Civil Action No.: 1:21-cv-10757-MKV

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Steven M. Lucks
S. Aaron Loterstein
FISHKIN LUCKS LLP
500 7th Ave, 8th Floor
New York, New York 10018
(646) 755-9200
slucks@fishkinlucks.com
aloterstein@fishkinlucks.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL ARGUMENT ............................................................................................................... 2

     I.     Altruis's Implied Covenant Claim Must Be Dismissed.......................................... 2

           A.     The Allegations Altruis Contends Support its Implied Covenant
                  Claim Are Duplicative, Irrelevant, or Both ................................................. 2

           B.     A Bad Faith Breach of Contract Is Still Just a Breach of Contract............. 4

           C.     Altruis's Implied Covenant Claim Would Not Entitle it to
                  Additional Damages Beyond Those Recoverable for its Breach of
                  Contract Claim .............................................................................................. 6

     II.     Altruis's GBL § 349 Claim Must Be Dismissed ................................................... 8

     III.     Altruis's Declaratory Judgment Claim Must Be Dismissed .................................. 9

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

## Cases

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
   937 F. Supp. 2d 355 (E.D.N.Y. 2013) ...................................................................... 5

*Busrel Inc. v. Dotton*,
   2021 WL 2980494 (W.D.N.Y. July 15, 2021) .......................................................... 6

*Contemporary Mission, Inc. v. Famous Music Corp.*,
   557 F.2d 918 (2d Cir.1977) ...................................................................................... 5

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018) .................................................................. 6, 10

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
   754 F.3d 136 (2d Cir. 2014) ..................................................................................... 9

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
   507 F. Supp. 3d 490 (S.D.N.Y. 2020
   aff'd, 2022 WL 852293 (2d Cir. Mar. 23, 2022) ....................................... 2, 4, 5, 6

*Kantor v. 75 Worth St., LLC*,
   945 N.Y.S.2d 245 (1st Dep't 2012) .......................................................................... 6

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995).................................................................................................. 9

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir. 1992) ................................................................................... 8, 9

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
   83 N.Y.2d 603 (1994) ........................................................................................... 7, 8

*Safka Holdings LLC v. iPlay, Inc.*,
   42 F. Supp. 3d 488 (S.D.N.Y. 2013) ........................................................................ 6

*Sveaas v. Christie's Inc.*,
   452 F. App'x 63 (2d Cir. 2011) ................................................................................ 5

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*,
   186 F. Supp. 3d 257 (E.D.N.Y. 2016) ...................................................................... 4

*Tradeshift, Inc. v. Smucker Servs. Co.*,
   No. 20-CV-3661 (MKV), 2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021) ............ 7, 8

*Travellers Int'l A.G. v. Trans World Airlines, Inc.*,
    41 F.3d 1570 (2d Cir. 1994) ........................................................................... 5

*Udell v. Berkshire Life Ins. Co. of Am.*,
    2005 WL 1243497 (E.D.N.Y. May 25, 2005) ........................................................ 7

**Statutes**

New York General Business Law § 349 ....................................................... 1, 8, 9, 10

## PRELIMINARY STATEMENT

Altruis's opposition is heavy on bombast and light on substance.  Altruis bases its breach of contract and implied covenant claims on identical allegations: that Defendants unlawfully terminated the NMA and failed to pay to Altruis contractually-owed commissions.[1]  For both claims, Altruis seeks to recover the identical unpaid commissions.  As described below, the allegations Altruis claims are unique to its implied covenant are either duplicative, irrelevant, or both.  Describing Defendants' conduct as "loathsome," "egregious," and "an illicit scheme" does not transform an ordinary breach of contract claim into an independent claim for breach of the implied covenant of good faith and fair dealing.  Accordingly, the implied covenant claim must be dismissed.

As for its GBL § 349 claim, Altruis concedes that this dispute concerns a private, one-off contractual arrangement, and in the SAC, Altruis does not suggest, let alone allege, any wrongful consumer-oriented conduct by Defendants.  Instead, Altruis argues that were the Court to dismiss its GBL § 349 claim, "Defendants can and will feel the freedom to engage in the same kind of deceptive and misleading acts with the public at large."  While its concern for the "public at large" is admirable, Altruis's argument is inconsistent with settled New York law that GBL § 349 claims must concern broad consumer-oriented conduct.  Moreover, Altruis does not even attempt to contend with Defendants' argument that its GBL § 349 claim independently fails because it is not based on a monetary loss independent of the loss caused by Defendants' alleged breach of contract.

Finally, in arguing that its declaratory judgment claim should survive dismissal, Altruis ignores that under the NMA, where either party terminates because of a material breach, that party retains the rights to the intellectual property that is the subject of Altruis's declaratory judgment

---

[1] Capitalized and abbreviated terms have the same meaning as in Defendants' moving brief (ECF No. 30).

claim.  Resolution of the breach of contract claim will thus settle the issues for which the declaratory judgment is sought, and that claim must therefore be dismissed.

## LEGAL ARGUMENT[2]

### I.      Altruis's Implied Covenant Claim Must Be Dismissed

Altruis cannot dispute that an implied covenant claim can "survive[] a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract*." JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 2022 WL 852293, at \*7 (2d Cir. Mar. 23, 2022).  Instead, it argues that its implied covenant claim is not duplicative "because it is "based on altogether different allegations" from its breach of contract claim.  ECF No. 32 (Altruis's Opposition to Defendants' Partial Motion to Dismiss) ("Opp'n Br.") at 3.  Altruis similarly contends that Defendants' "loathsome" conduct manifests their bad faith in terminating the NMA, thereby giving rise to an implied covenant claim.  *Id.* at 1, 8-9.  Both arguments are meritless.

### A.      The Allegations Altruis Contends Support its Implied Covenant Claim Are Duplicative, Irrelevant, or Both

A side-by-side comparison of the allegations underlying Altruis's breach of contract and implied covenant claims makes clear that the gravamen of both claims is identical.  Altruis bases both claims on Defendants' refusal to pay commission and allegedly unlawful termination of the NMA without providing Altruis the opportunity to cure. *Compare* SAC ¶¶ 51-52 (allegations supporting breach of contract claim), *with id.* ¶¶ 56-62 (allegations supporting implied covenant claim).  Through both claims, Altruis seeks to recover $2.3 million in commissions that Altruis contends are owed under the NMA. *Id.* ¶¶ 53, 71, 74.

---

[2] Throughout its opposition, Altruis attempts to support its arguments with various purported references to allegations from the SAC.  Yet in its entire opposition, Altruis includes only one citation to its SAC, *see* Opp'n Br. at 4, and several of the facts it now claims to have alleged are not in the SAC at all.  Where appropriate, Defendants have highlighted examples of this practice.

Despite the obvious overlap between the claims, Altruis points to several allegations that it contends renders its implied covenant claim distinct from its breach of contract claim. First, Altruis alleges that Defendants "provided [Altruis] with no meaningful explanation or specifics of the eleventh hour alleged deficiencies with regard to Altruis' performance" and "gave [Altruis] no opportunity to cure any alleged deficiencies, a right it bargained for and is entitled to under the NMA." Opp'n Br. at 8. As Altruis itself contends, the right to cure is expressly granted by the NMA, and a core element of its breach of contract claim is that Defendants terminated the NMA without providing a right to cure. *See* SAC ¶ 52 (alleging that Defendants breached the NMA because they improperly terminated without giving Altruis a right to cure).

Next, Altruis contends that Defendants delayed in notifying Altruis that it had failed to perform under the NMA. Opp'n Br. at 8. Altruis does not explain how this alleged delay constitutes a breach or caused it damage separate from the alleged breach of contract. Nor can it. Whether Defendants terminated in January 2022 or October 2022, Altruis's underlying contention is still that the termination without a right to cure was improper and that it is owed commissions.

Altruis also claims that it "alleged that ProSight made no direct effort to make Plaintiff aware of its intention to withdraw from the captive insurance business." *Id.* As an initial matter, that allegation is not in the SAC.[3] But even if it were, it would be legally irrelevant. Indeed, Altruis represented in the NMA that nothing in that agreement "shall be interpreted as in any way limiting the Company's right to terminate policies in accordance with the terms of such policies and applicable law." ECF No. 28-1 § 6(J). Accordingly, Defendants were free to terminate or non-

---

[3] Altruis repeatedly alleges that Defendants unilaterally decided to exit the captive space. *See, e.g.*, SAC ¶¶ 32-34, 56. It does not allege anywhere in the SAC that Defendants made no efforts to make Altruis aware of this decision. Moreover, while Altruis claims that Defendants notified captive insurance clients on October 29, 2021 without notice to Altruis, *see* Opp'n Br. at 2, that allegation does not appear in the SAC.

renew their captive policies without first notifying Altruis.  "It cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020), aff'd, 2022 WL 852293 (2d Cir. Mar. 23, 2022).  Moreover, as alleged, Defendants' decision to exit the captive insurance business did not harm Altruis.[4]  Instead, that decision allegedly motivated Defendants to terminate the NMA and refuse to pay Altruis its commissions.  Even if that were true, those allegations concern the motivation for an express breach of contract and do not give rise to a separate claim for breach of the implied covenant.  Altruis continues to ignore that "bad faith in connection with a breach of contract claim does not provide an independent basis for recovery."  *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016).

### B.    A Bad Faith Breach of Contract Is Still Just a Breach of Contract

Altruis's remaining arguments concerning its implied covenant claim, all of which concern Defendants' alleged motivations in terminating the NMA, are irrelevant, no matter how "contemptuous" or "loathsome" Altruis believes Defendants have acted.[5]

---

[4] To be clear, Altruis does not allege that Defendants exited the captive insurance business, then used the lack of captive insurance customers as a basis for terminating the NMA and refusing to pay Altruis its commissions.  Rather, as reflected in Defendants' termination notice, which Altruis attaches to its SAC, Defendants terminated because Altruis failed to perform at least four Minimum Services for the existing captive insureds.  *See* ECF No. 28-3.

[5] Altruis peppers its opposition with allegations that Defendants "intended to take advantage of Mr. Beneducci's perilous health condition" and was "looking to run out the clock hoping to . . . avoid payment to Altruis during Mr. Beneducci's lifetime."  Opp'n Br. at 8, 9-10.  These contentions are not only legally irrelevant, but they are also nonsense.  Altruis, not Mr. Beneducci, is the counterparty to the NMA.  *See* ECF No. 28-1 (NMA between Defendants and Altruis); 28-2 (NMA Amendment between Defendants and Altruis).  Altruis does not explain how Mr. Beneducci's death would benefit Defendants or relieve them of their contractual duties to Altruis.  Moreover, if Defendants were hoping to capitalize on Mr. Beneducci's demise, their decision to terminate the NMA during Mr. Beneducci's lifetime would be inexplicable.  Seeking to emphasize the relevance of Mr. Beneducci's illness, Altruis also contends that Defendants provided "written confirmation" of knowledge of his illness in November 2021.  *See* Opp' Br. at 2.  While irrelevant, that allegation does not even appear in the SAC.

Citing to *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1577 (2d Cir. 1994), Altruis argues that "where a party to a contract acts with improper motive, that party will be found to have breached the implied covenant of good faith and fair dealing." Opp'n Br. at 8. But *Travellers* is a narrow holding concerning a discretionary promotional contract, which required the court to evaluate the defendant's conduct to determine the reasonableness of its promotional efforts. Relying on the rule that "when a party undertakes specific promotional obligations, its discretion must be exercised in good faith and . . . determination of [the] effectiveness . . . of promotion has to be made in good faith," the court analyzed whether the defendant had acted in bad faith in failing to effectively promote the plaintiff's product. 41 F.3d at 1576-77 (citing *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 923 n. 8 (2d Cir.1977). Here, the NMA is not a promotional contract, and the question of whether Defendants or Altruis have breached the NMA does not turn on either party's intent.

In that regard, Altruis ignores the many authorities that make clear that where a defendant is alleged to have breached an express contractual term, it is irrelevant that the defendant acted in bad faith or offered a pretextual reason for the breach. *See, e.g.*, *JN Contemporary Art LLC*, 507 F. Supp. 3d at 505 (finding claim that defendant "pretextually canceled the [agreement] . . . [wa]s not distinct from the argument that [defendant] had an obligation to perform under the [agreement]"); *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) ("[P]laintiff may allege bad faith as part of its contract claim, but bad faith does not provide an independent basis for recovery."); *Sveaas v. Christie's Inc.*, 452 F. App'x 63, 66 (2d Cir. 2011) ("The district court properly construed [plaintiff's] breach of the covenant of good faith and fair dealing claim as a breach of contract claim premised upon [defendant's] alleged bad-faith performance of the Agreement.").

C.    **Altruis's Implied Covenant Claim Would Not Entitle it to Additional Damages Beyond Those Recoverable for its Breach of Contract Claim**

Altruis's implied covenant claim not only rests on the same allegations as its breach of contract claim, but the relief sought is also "intrinsically tied to the damages allegedly resulting from the breach of contract." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89 (S.D.N.Y. 2018).  As the Second Circuit recently explained, that alone is enough to dismiss the implied covenant claim as duplicative.  *JN Contemp. Art LLC*, 2022 WL 852293, at *7 ("Even accepting [plaintiff's] arguments that it set out a different factual basis for this claim than the factual basis set out in its breach of contract claim, the damages sought for both claims would be the same: compensation for the lost sale.").

Seeking to sidestep this fatal flaw, Altruis argues in its preliminary statement, but not in its legal argument, that if its bad faith allegations are proven true, it will "warrant the consequential and punitive damages associated with that claim."  Opp'n Br. at 3.  But under New York law, neither consequential nor punitive damages are available for the bad faith conduct Altruis alleges.

Under New York law, to obtain consequential damages for breach of contract or implied covenant claims, a plaintiff must show that consequential damages "were within the contemplation of the parties at the time the contract was made."  *Busrel Inc. v. Dotton*, 2021 WL 2980494, at *14 (W.D.N.Y. July 15, 2021) (citing *Kantor v. 75 Worth St., LLC*, 945 N.Y.S.2d 245, 245 (1st Dep't 2012); *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488 (S.D.N.Y. 2013) (dismissing request for consequential damages for claims including breach of contract and breach of the implied covenant because the complaint did not "plead that those damages were the natural and probable consequences of the breach, and were contemplated at the time the contract was executed").  "[T]o demonstrate such an understanding on the part of the parties to the contract, there must be a specific

6

contractual provision permitting recovery for consequential damages." *Udell v. Berkshire Life Ins. Co. of Am.*, 2005 WL 1243497, at *6 (E.D.N.Y. May 25, 2005). Here, there is no such provision in the NMA, and Altruis has not alleged that consequential damages were the natural and probable consequences of the breach or were contemplated at the time of contracting. More importantly, even if consequential damages were available for breach of contract-based claims, Altruis would be entitled to those damages for both its breach of express contract claim and its implied covenant claim. Accordingly, there would be no difference in the remedy available between the two claims.

As for punitive damages, the Court of Appeals has made clear that for "ordinary" contract-based claims (including claims for breach of the implied covenant), "[p]unitive damages are not recoverable . . . as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994). Accordingly, "a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Id. See also Tradeshift, Inc. v. Smucker Servs. Co.,* No. 20-CV-3661 (MKV), 2021 WL 4463109, at *9 (S.D.N.Y. Sept. 29, 2021) (under *Rocanova*, "a plaintiff must establish that a defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directed not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally").

Here, Altruis has failed to plead *any* of the *Rocanova* elements, much less all of them. Even accepting its allegations as true, Altruis has not alleged an independent tort. Nor has it alleged facts demonstrating egregious conduct, which requires a showing that Defendants engaged in acts that "evince[e] a high degree of moral turpitude" or "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Rocanova*, 83 N.Y.2d at 613 (internal quotations and

citation omitted).  And as described more fully in connection with Altruis's GBL § 349 claim, this matter is a private contract dispute between businesses, involving no behavior directed at the public.  Accordingly, punitive damages are unavailable.  *See Tradeshift*, 2021 WL 4463109, at *10 (striking punitive damages request at motion to dismiss stage because counterclaimant failed to establish any of the three *Rocanova* requirements).

In short, Altruis cannot use its purported right to consequential and punitive damages as a basis for maintaining an implied covenant claim.

## II.      Altruis's GBL § 349 Claim Must Be Dismissed

Defendants argued that Altruis's GBL § 349 claim must be dismissed because (i) this is a private contract dispute, rather than the broad consumer-oriented conduct to which GBL § 349 applies, and (ii) the GBL § 349 claim does not allege monetary loss independent of the claimed losses caused by Defendants' alleged breach of contract.  In opposition, Altruis does little to respond to the former argument and completely fails to respond to the latter argument, effectively conceding it.

As for Defendants' argument that this is nothing more than a private contract dispute, Altruis invents a new standard for GBL § 349 claims.  It argues that while the NMA might be a private contract, Defendants have other contracts, with other parties, and "if [Defendants'] behavior is not curtailed, [they] can and will feel the freedom to engage in the same kind of deceptive and misleading acts with the public at large."  Opp'n Br. at 12.  Altruis cites no authority for this novel expansion of a GBL § 349 claim.  This is no surprise.  Were Altruis's sweeping interpretation viable, every breach of contract claim between commercial parties would justify a GBL § 349 claim to prevent an epidemic of broken promises and breached contracts.

And while Altruis cites *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992), for the unremarkable proposition that "insurance companies are not outside the reach of GBL

§ 349 claims," Opp' Br. at 12, that has nothing to do with whether this case meets the criteria for GBL § 349. *Riordan* itself concerned alleged deceptive practices by an insurance company in connection with claims handling under a standard homeowner's insurance policy. *Id.* at 49-50. That claim, like the countless others in which GBL § 349 has been applied, involved acts or practices with broad consumer impact.

By contrast, this case is a "[p]rivate contract dispute[], unique to the parties," and it therefore would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) ("Typically, private contract disputes cannot form the basis of a § 349 claim. A plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large."). The GBL § 349 claim must therefore be dismissed.

## III.      Altruis's Declaratory Judgment Claim Must Be Dismissed

Finally, Altruis's claim under the Declaratory Judgment Act must be dismissed as its breach of contract claim will necessarily resolve the issues for which Altruis seeks a declaration.

Altruis argues that "Plaintiff's breach of contract claim may not resolve rights to intellectual property emanating from these parties' business relationship" and that a favorable determination on Altruis's breach of contract claim "may not resolve who has rights, title to and interest in the" relevant intellectual property. Opp'n Br. at 13.

Altruis's argument ignores that under the express terms of the NMA, where a party terminates for breach, the intellectual property follows the terminating party. *See* ECF No. 28-1 § 22(B)-(C). Under § 22(B) of the NMA, if Defendants terminate because of a material breach by Altruis, Defendants retain all rights, title to, and interest in the intellectual property. *Id.* § 22(B). If, on the other hand, Altruis terminates the NMA because of a breach by Defendants, § 22(C) provides that Altruis retains the rights, title to, and interest in the intellectual property. *Id.* Thus,

were the Court to ultimately find that Altruis performed its obligations and Defendants breached their obligations under the NMA (both of which are necessary elements of Altruis's breach of contract claim), Altruis would retain the rights to the intellectual property.   Accordingly, the declaratory judgment claim "serves no useful purpose," and it must be dismissed.  *See EFG Bank AG*, 309 F. Supp. 3d at 100 (internal quotations and citations omitted).

## <u>CONCLUSION</u>

For these reasons, and those set forth in its moving brief, Defendants respectfully submit that Altruis's claims for breach of the implied covenant of good faith and fair dealing, violation of GBL § 349, and for a declaratory judgment be dismissed, with prejudice.


Dated: New York, New York
      April 4, 2022                Respectfully submitted,

                                      */s/ S. Aaron Loterstein*
                                      Steven M. Lucks
                                      S. Aaron Loterstein
                                      FISHKIN LUCKS LLP
                                      500 7th Ave, 8th Floor
                                      New York, New York 10018
                                      (646) 755-9200
                                      slucks@fishkinlucks.com
                                      aloterstein@fishkinlucks.com

                                      *Attorneys for Defendants*