USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/26/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALTRUIS GROUP, LLC,

                Plaintiff,

          -against-

PROSIGHT SPECIALTY MANAGEMENT
COMPANY, INC., NEW YORK MARINE AND
GENERAL INSURANCE COMPANY and
GOTHAM INSURANCE COMPANY,

                Defendants.

1:21-cv-10757-MKV

**OPINION AND ORDER ON
MOTIONS *IN LIMINE***

MARY KAY VYSKOCIL, United States District Judge:

Defendants ProSight Specialty Management Company, New York Marine and General Insurance Company, and Gotham Insurance Company (collectively, "Defendants") move *in limine* to preclude Plaintiff Altruis Group, LLC ("Plaintiff") from introducing at trial parol evidence regarding the parties' contract. [ECF No. 67.] Plaintiff moves *in limine* to exclude: (1) hearsay relating to the parties' intent in forming the contract at issue; (2) evidence pertaining to Defendant's unjust enrichment counterclaim; and (3) evidence that was not identified during discovery. [ECF No. 64.] For the following reasons, both motions are DENIED.

## BACKGROUND

Plaintiff provides services in the captive insurance market. Second Amended Compl. ¶ 4 [ECF No. 28] ("SAC"). Defendants are insurance and management companies. SAC ¶¶ 5–8.

On January 23, 2020, the parties executed a Niche Management Agreement ("NMA"), stating that Plaintiff would provide services for Defendants' customers. SAC ¶ 20. Originally, Section 6 of the NMA—titled "General Duties of [Plaintiff]"—stated that Plaintiff was "authorized to perform any or all of [a number of listed] duties, as agreed with [Defendants] from time to time." Exhibit A § 6 [ECF No. 28-1] ("NMA"). In exchange, pursuant to NMA Section 14, Plaintiff

would receive "a Commission equal to up to 12% of the Gross Collected Premiums on business written under [the NMA]." NMA § 14(A). The NMA anticipated that the parties would draft a separate agreement outlining the "terms of which Captive Services [would be provided] and the amount of Commission applicable" for each customer. NMA § 14(A). The NMA also contains a merger clause, explaining that the NMA, together which any attached exhibits or addendums, constituted "the entire understanding of the parties." NMA § 29.

On May 4, 2020, the parties executed an amendment to the NMA (the "Amendment"). SAC ¶ 26; *see* Exhibit B [ECF No. 28-2] ("Amend."). Relevant here, the Amendment created a new Section 6.1, to be added "immediately after" NMA Section 6—titled "Minimum Duties of [Plaintiff]." Amend. § 2.A. Section 6.1 states that Plaintiff "is hereby *authorized and obligated* to perform *all the minimum services* [later enumerated in Section 6.1] (the "Minimum Services") . . . with respect to any and/or all Captive Capabilities Niche transactions." Amend. § 2.A.A (emphasis added). However, Section 6.1 continues to provide that, at "[Defendants'] sole option . . . [Plaintiff] shall perform *some, all, or none* of the Minimum Services." Amend. § 2.A.A (emphasis added). Section 6.1 then lists nine specific "Minimum Services" for Plaintiff to complete in areas such as "collateral management" and "compliance." Amend. § 2.A.A. Coupled with these revisions, the Amendment added new language to Section 14 of the NMA, stating that "in consideration" for its performance of the Minimum Services listed in Section 6.1, Plaintiff would be entitled to additional commissions. *See* Amend. § 2.B.C.

In November 2021, Defendants terminated the NMA based on an alleged material breach by Plaintiff. SAC ¶ 40. Specifically, Defendants claimed that Plaintiff failed to provide the "Minimum Services" required under the NMA Amendment. *See* Exhibit C [ECF No. 28-3]. Several months later, Plaintiff commenced this action, alleging breach of contract, breach of the

implied covenant of good faith and fair dealing, violations of Section 349 of the New York General Business Law ("GBL"), and seeking declaratory relief.  *See* Complaint [ECF No. 1].  In an Opinion and Order dated February 27, 2023, the Court dismissed Plaintiff's claims for breach of the implied covenant, GBL Section 349, and its request for declaratory relief.  Memorandum Opinion & Order [ECF No. 54].  Defendants then answered the Complaint and asserted a counterclaim for unjust enrichment.  Amended Answer [ECF No. 61].  Plaintiff answered the counterclaim.  Answer [ECF No. 62].

Discovery has closed and trial is scheduled to begin on August 15, 2023.  *See* Order [ECF No. 63].  The parties waived the right to a jury trial in the NMA, *see* NMA § 16, and as such, the case is to be tried to the Court.  *See* Civil Case Management Plan and Scheduling Order ¶ 2 [ECF No. 37] ("CMP").

## **LEGAL STANDARD**

The purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).  Evidence challenged on a motion *in limine* "should only be precluded when it is clearly inadmissible on all possible grounds."  *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (citation and quotation marks omitted).  Moreover, "[a] court's decision on the admissibility of evidence on a motion *in limine* may be subject to change when the case unfolds . . . because the actual evidence changes from that proffered by the movant." *Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 479 (S.D.N.Y. 2016) (citation omitted).

**DISCUSSION**

Defendants seek to preclude Plaintiff from introducing parol evidence regarding the meaning of the NMA.  *See* Memorandum of Law in Support [ECF No. 68] ("Def. Mem."). Plaintiff, in turn, seeks to exclude: (1) hearsay testimony from Defendants' corporate representative regarding the parties' intent in executing the NMA; (2) any evidence in support of Defendants' unjust enrichment counterclaim; and (3) evidence that was not identified by Defendants during discovery.  *See* Memorandum of Law in Support [ECF No. 65] ("Pl. Mem."). [ECF No. 65.]

**I.     Parol Evidence**

Both parties contend that the NMA Amendment is unambiguous.  However, the parties proffer different interpretations of its meaning.  Defendants contend that the NMA Amendment unambiguously obligated Plaintiff to perform *all* "Minimum Services."  Def. Mem. 9.  Given the purported lack of textual ambiguity, Defendants seek to preclude Plaintiff from introducing "parol evidence of negotiations, course of dealing, the parties' intent, or anything tending to bear on the meaning of the NMA Amendment beyond the four corners of the document."  Def. Mem. 16. Plaintiff responds by largely ignoring the text of the NMA Amendment and, instead, quoting deposition testimony at length, in an effort to persuade the Court that Plaintiff was only obligated to "provide services . . . on an as needed and as requested basis."  Plaintiff's Memorandum of Law in Opposition 8 [ECF No. 72] ("Pl. Opp.").  If the Court finds the NMA ambiguous, Plaintiff asks the Court to consider parol evidence to interpret its meaning. *See* Pl. Opp. 8–10.  But Plaintiff at the same time asks the Court to preclude Defendants' corporate representative from offering hearsay testimony or evidence regarding "the drafting, formation, and intent of the NMA."  Pl. Mem. 5.

Neither party indicates what specific pieces of parol evidence it seeks to preclude. Without the benefit of summary judgment motion practice,[1] the Court provides the following preliminary ruling based on the parties' *in limine* briefing alone.

A.     *Principles of Contract Interpretation*

In New York, "[p]arol evidence—evidence outside the four corners of the document—is admissible *only* if a court finds an ambiguity in the contract." *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436, 986 N.E.2d 430, 433, 963 N.Y.S.2d 613, 616 (N.Y. 2013) (emphasis added). Contractual language is ambiguous if the terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)).

The Court determines whether a contract is ambiguous—or not—"by reference to the contract *alone*." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990). That is to say, "extrinsic evidence may not be considered unless the document itself is ambiguous." *S. Rd. Assocs., LLC v. Int'l Bus. Machines Corp.*, 4 N.Y.3d 272, 278, 826 N.E.2d 806, 809, 793 N.Y.S.2d 835, 838 (N.Y. 2005); *see also Kass v. Kass*, 91 N.Y.2d 554, 566, 696 N.E.2d 174, 180, 673 N.Y.S.2d 350, 356  (N.Y. 1998) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources."); *United States v. Assets of Revere Armored, Inc.*, 131 F.3d 132 (2d Cir. 1997) ("When the terms of a contract are clear and unambiguous, this Court will not look beyond the four corners of the contract itself to interpret the parties' intentions."); *Vivir*

---

[1] This Court's Individual Rules of Practice provide that summary judgment motions are generally not appropriate in non-jury cases. *See* Individual Rule of Practice in Civil Cases 5.A.

*of L I, Inc. v. Ehrenkranz*, 127 A.D.3d 962, 963, 7 N.Y.S.3d 411, 413 (2d Dep't 2015) ("[T]he court should determine the intent of the parties from within the four corners of the contract without looking to extrinsic evidence to create ambiguities."). Courts may, however, "examine the entire contract and consider the relation of the parties and the circumstances under which it was executed" in determining whether an agreement is ambiguous. *Kass*, 91 N.Y.2d at 566, 696 N.E.2d at 180–81, 673 N.Y.S.2d at 356–57.

When an agreement is ambiguous, courts may consider extrinsic evidence "to ascertain the parties' intent at the formation of the contract." *Olin Corp. v. OneBeacon America Ins. Co.*, 864 F.3d 130, 148 (2d Cir. 2017); *see also Sound Distrib. Corp. v. Richmond*, 213 A.D.2d 178, 179, 625 N.Y.S.2d 3, 3 (1st Dep't 1995) (considering parol evidence "to establish the intent of the parties."). It is the mutual intent of the parties that is relevant. *See, e.g.*, *World Trade Ctr. Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003), *rev'd on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ("The cardinal principle for the construction and interpretation of . . . contracts . . . is that the intentions of the parties should control"); *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F. Supp. 75, 79 (S.D.N.Y. 1992) ("If a court finds that [a contract] is ambiguous, it must consider extrinsic evidence to assist it in determining the *mutual* intent of the parties in entering the contract." (emphasis added)). The undisclosed unilateral intent of one party is not relevant. *See, e.g.*, *Thomson Corp. v. Emps. Reinsurance Corp.*, No. 06-CV-741, 2008 WL 11384181, at *6 (S.D.N.Y. Jan. 9, 2008) ("Determination of the intent of the parties at the time they entered into the contract is not governed by their unexpressed subjective views, but rather by what they wrote, their acts, conduct and all surrounding circumstances." (quoting *Lubrication & Maint., Inc. v. Union Res. Co.*, 522 F. Supp. 1078, 1081 (S.D.N.Y. 1981)). Similarly, evidence evincing "unilateral expressions of one party's postcontractual subjective understanding

of the terms of the agreement . . . [are] not probative as an aid to the interpretation of the contract."
*Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006) (cleaned up), *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008).

"[W]here a contract contains a merger clause, a court is obliged 'to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" *Schron*, 20 N.Y.3d at 436, 986 N.E.2d at 433–34, 963 N.Y.S.2d at 616 (citation omitted). But parol evidence *may* be considered—notwithstanding a merger clause— when a court interprets ambiguous terms or language. *See, e.g., Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 409 (S.D.N.Y. 2016) (considering extrinsic evidence to clarify meaning of contractual terms despite the presence of a merger clause).

B.    *The NMA Amendment is Ambiguous*

The Court finds that the NMA Amendment is reasonably capable of more than one meaning. The parties dispute the import of the following language:

> Beginning at the Appointment Point, [Plaintiff] is hereby authorized and obligated to perform all the minimum services set forth below in this Section 6.1 (the "Minimum Services") with respect to any and/or all Captive Capabilities Niche transactions. At the [Defendants'] sole option, [Plaintiff] shall perform some, all, or none of the Minimum Services with respect to any and/or all Captive Capabilities Niche transactions.

Amend. § 2.A.A.

Defendants rely primarily on the first sentence. They contend that, irrespective of what Defendants instructed Plaintiff to do, Plaintiff was still "obligated to perform all the minimum services." Def. Mem. 11. The Court finds this reading reasonable because the first sentence specifically provides that Plaintiff was "obligated" to perform the Minimum Services and provides

a time at which performance needed to begin: "the Appointment Point."[2]   Moreover, the word "hereby" immediately preceding "authorized and obligated" further indicates that Plaintiff would not become bound at some indefinite time in the future when Defendants requested performance. Rather, Plaintiff's obligation attached upon adoption of Section 6.1.

Plaintiff argues that it only needed to perform the "services [that] it was asked to . . . perform."  Pl. Opp. 7.  In other words, while Plaintiff was "authorized and obligated to perform all the minimum services," its obligations arose only when Defendants exercised their "sole option" and requested that Plaintiff "perform some, all, or none of the Minimum Services."  This interpretation is reasonable, as well.  Under this view, the second sentence clarifies when (and to what extent) Plaintiff was obligated to perform the Minimum Services.  After all, how would Plaintiff know whether to perform "some, all, or none of the Minimum Services" without direction from Defendants?   Further, if the first sentence created an obligation that was effective immediately, as Defendants urge, it would be redundant—and perhaps even contradictory—to say that Plaintiff's obligation to perform "all" the Minimum Services was at Defendant's "sole option."

The Court notes that each side's proffered interpretation appears to read one of the two sentences in Section 6.1 in isolation and improperly ignores the other sentence and/or the remainder of the contract.  *See Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752, 543 N.E.2d 722, 723, 545 N.Y.S.2d 79, 80 (N.Y. 1989) (rejecting reading that "render[ed] the previous sentence . . . a nullity").  In presenting evidence at trial, the parties should be mindful of these basic principles of contract interpretation.

The text of the contract provides no further guidance on which reading is correct. Discerning no clear, definite meaning from the text of the NMA, the Court finds that the

---

[2] The NMA defines the "Appointment Point" as the date on which Plaintiff "obtain[s] all necessary licenses to act as a broker as contemplated [by the NMA]."  NMA § 2.A.

contractual language at issue is ambiguous.  *See Law Debenture Trust Co.*, 595 F.3d at 465–66; *see also Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994) (finding contract ambiguous "[g]iven the two conflicting reasonable interpretations").  Accordingly, parol evidence bearing on the parties' *mutual* intent at the time of contracting with respect to the meaning of the NMA will be admitted at trial.  The admissibility of that evidence will be determined on a case-by-case basis.  Defendants' motion *in limine* is therefore DENIED.  For the same reasons, the first issue raised in Plaintiff's motion *in limine*—which is the mirror of Defendants' motion—is DENIED.

## II.    Defendants' Unjust Enrichment Counterclaim

Plaintiff seeks a ruling prohibiting Defendants from introducing testimony or evidence pertaining to Defendants' unjust enrichment counterclaim.  Plaintiff contends that because the NMA "is a valid and enforceable contract," the unjust enrichment claim is "unenforceable" under New York law.  Pl. Mem. 8–9.  Defendants disagree, arguing that Plaintiff's argument is improper on a motion *in limine* and, in any event, New York law permits such a claim.  *See* Defendants' Memorandum of Law in Opposition 3, 4–6 [ECF No. 74] ("Def. Opp.").

The Court agrees with Defendants that Plaintiff's argument is improper.  A motion *in limine* "is generally not the appropriate vehicle for effecting dismissal of entire claims."  *New America Mktg. FSI LLC v. MGA Ent., Inc.*, 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016); *see also Dial Corp. v. News Corp.*, No. 13-CV-6802, 2016 WL 690868, at *3 (S.D.N.Y. Feb. 17, 2016) ("A motion *in limine* is not the appropriate tool to ask this Court to weigh the sufficiency of the evidence."); *Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866, 2014 WL 7392905, at *10 (S.D.N.Y. Dec. 29, 2014) ("[T]he motion is a patently improper attempt to seek judgment as a matter of law in the guise of a motion *in limine* concerning the admissibility of evidence.").  Plaintiff asks the Court to

conclude that, as a matter of law, Defendants cannot succeed in establishing their unjust enrichment claim.  Pl. Mem. 8–10.  This argument "may be made in summation when the Court considers its findings of fact and conclusions of law" but is not "properly the basis of the exclusion of evidence on an *in limine* motion."  *Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767, 2023 WL 1777248, at *7 (S.D.N.Y. Feb. 6, 2023).

In any event, New York law permits an unjust enrichment claim by a party, such as Defendants here, claiming overpayment under a contract.  *See Kirby McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C.*, 15 A.D.3d 233, 790 N.Y.S.2d 84, 85 (1st Dep't 2005) ("There is a long-established principle that money paid under mistake of material fact may be recovered."); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) ("[T]he rule defendants would have me adopt—that an unjust enrichment claim is never cognizable where a valid contract exists between the parties—is too broadly stated.  For example, where one party to a contract accidentally pays another more than the contract requires, the overpayer has an unjust enrichment claim to recover the excess.").  Defendants contend that their unjust enrichment claim "is for overpayment of commissions" and the NMA provides no remedy.  Def. Opp. 4.  Although Plaintiff contends that there was "no mistaken overpayment here," *see* Plaintiff's Memorandum of Law in Further Support 5 [ECF No. 79], a motion *in limine* is not, for the reasons discussed above, the appropriate vehicle to resolve this factual dispute about whether Defendants can carry their burden of proof with respect to their claim.  *See Pavone v. Puglisi*, No. 8-CV-2389, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) ("A motion *in limine* 'is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense.'" (citation omitted)).

For these reasons, Plaintiff's motion *in limine* to preclude Defendants from offering evidence relevant to their unjust enrichment counterclaim is DENIED.

### III.    Evidence Not Timely Disclosed During Discovery

Finally, Plaintiff vaguely "moves to exclude any evidence or witnesses not timely disclosed during discovery."  Pl. Mem. 10.  Plaintiff does not identify any particular witness or piece of evidence that it anticipates Defendants will offer which, according to Defendants, make it "impossible for [Defendants] to meaningfully respond" to this motion.  Def. Opp. 6.

Discovery in this action closed on January 9, 2023.  *See* Order [ECF No. 44].  The time has long since passed for the parties to raise discovery disputes.  *See* Individual Rule of Practice in Civil Cases 3.D; CMP ¶ 9.  Having received no motions to compel or communications regarding any outstanding discovery disputes or issues, the Court can only presume that discovery was properly conducted and has now concluded.

The parties have not provided exhibit lists to the Court and Plaintiff does not particularize the specific exhibits or evidence it seeks to exclude.  The Court declines Plaintiff's invitation to speculate prematurely on what evidence hypothetically might be offered, or what witnesses might potentially be called.  *See Belvin v. Electchester Mgmt., LLC*, No. 17-CV-6303, 2022 WL 10586743, at *7 (E.D.N.Y. Oct. 18, 2022) (denying motion *in limine* where the court was "asked to rule on abstract and generalized hypotheticals rather than specific language, phrases or evidence" (citation and quotation marks omitted)).  The motion to exclude evidence not timely disclosed during discovery is therefore DENIED.[3]

---

[3] The Court warned the parties at the May 9, 2023 Status Conference that motions *in limine* should only be made if necessary and/or helpful to the Court.  This motion was *not* necessary or helpful.  Plaintiff is on notice that further frivolous filings—which needlessly burden the Court and waste judicial resources—will not be tolerated.

## CONCLUSION

For these reasons, Defendants' motion *in limine* is DENIED.  Plaintiff's motion *in limine*

is DENIED.  The Clerk of Court is respectfully requested to terminate docket entries 64 and 67.

**SO ORDERED.**

**Date:  July 26, 2023**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**