UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/10/2023

ALTRUIS GROUP, LLC,

        Plaintiff,

-against-

PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC., NEW YORK MARINE AND GENERAL INSURANCE COMPANY and GOTHAM INSURANCE COMPANY,

        Defendants.

1:21-cv-10757 (MKV)

**ORDER OF DISMISSAL**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff, a Limited Liability Company ("LLC"), asserts a breach of contract claim against Defendants ProSight Specialty Management Company, New York Marine and General Insurance Company, and Gotham Insurance Company (collectively "Defendants"), invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Complaint ¶ 9 [ECF No. 1] ("Compl."). Defendants argue that this case must be dismissed for lack of subject matter jurisdiction. *See* Letter [ECF No. 97]; Opposition Brief [ECF No. 101] ("Def. Opp."). The Court agrees. Because Plaintiff has not adequately alleged that this Court has diversity jurisdiction, this case is DISMISSED.

**BACKGROUND**

    Plaintiff commenced this action in December 2021. *See* Compl. The Complaint failed to identify the citizenship of the members of the Plaintiff LLC, prompting this Court to enter an Order directing Plaintiff to show cause why this case should not be dismissed for lack of subject matter jurisdiction. *See* Order to Show Cause [ECF No. 11].

    In response, Plaintiff filed an Amended Complaint, and subsequently a Second Amended Complaint, alleging that diversity jurisdiction existed because "Plaintiff, Altruis Group, LLC and its members are citizens of Florida and Defendants are citizens of New York." *See* Amended

Complaint ¶ 9 [ECF No. 16] ("Am. Compl."); Second Amended Complaint ¶ 9 [ECF No. 28] ("SAC"). Specifically, Plaintiff alleged that "[t]here are four members of Altruis Group, LLC" and "[a]ll four members of Altruis Group, LLC presently reside at 7193 Winding Bay Ln, West Palm Beach, FL 33412." *See* Am. Compl. ¶¶ 10–12; SAC ¶¶ 10‑12.

On the basis of those representations, this litigation continued for nearly two years. The Court resolved a motion to dismiss, *see* Memorandum Opinion and Order Granting Partial Motion to Dismiss [EC No. 54], and the parties proceeded to discovery, which closed in January 2023. *See* Civil Case Management Plan and Scheduling Order [ECF No. 37]; Order [ECF No. 44]. Trial was scheduled for August 15, 2023. *See* Trial Scheduling and Logistics Order [ECF No. 80]. In anticipation of trial, the parties filed, and the Court ruled on, two motions *in limine*. *See* Opinion and Order on Motions *in Limine* [ECF No. 82]. The parties and the Court continued to prepare for trial scheduled to commence next week.

However, based on assertions in a Proposed Joint Pretrial Order submitted to the Court nearly two years after this action was filed and two weeks before trial, it is now clear that Plaintiff's allegations with respect to the membership of the Plaintiff LLC were false. Soo too were the allegations regarding the citizenship of Defendants. Specifically, the Amended Complaint and SAC improperly alleged only that Defendants were citizens of New York. *See* Am. Compl. ¶ 9; SAC ¶ 9. In the Proposed Joint Pretrial Order, Plaintiff reported—for the first time—that "[t]he Beneducci Family Legacy Trust is the sole member of Altruis Group, LLC." Proposed Joint Pretrial Order 2 [ECF No. 88] ("PJPO"). Plaintiff did not acknowledge that its alleged basis for diversity jurisdiction had changed, nor did it provide the Court with any information about the membership or citizenship of the Beneducci Family Legacy Trust ("the Trust"). Indeed, it was Defendants who informed the Court that deposition testimony revealed that the Trust "own[ed] all

2

of the membership interests in Altruis," creating a potential issue with diversity jurisdiction since Defendants are, in fact—and contrary to the allegations in the Amended Complaint and SAC—citizens of *both* New York and New Jersey.  *See* PJPO 2–3.

Plaintiff also asserted in the Proposed Joint Pretrial Order that "Plaintiff is a Delaware limited liability company with its principal place of business located at 700 S. Rosemary Avenue, West Palm Beach, Florida."  PJPO 2.  These assertions deliberately clouded the issue at hand since "the citizenship of an LLC has *nothing to do* with its state of formation or principal place of business; rather, the citizenship of an LLC consists of the imputed citizenship of each one of its members."  *Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 182 (E.D.N.Y. 2022) (emphasis added).[1]

Upon reviewing the Proposed Joint Pretrial Order, the Court issued an Order, again directing Plaintiff to show cause why this case should not be dismissed for lack of subject matter jurisdiction.  *See* Order to Show Cause [ECF No. 92].[2]  In response, Plaintiff filed under seal several documents pertaining to the Trust.  *See* Declaration in Support [ECF No. 95].  Plaintiff also submitted affidavits of Joseph Beneducci, Sr. and Brian E. Raftery.  *See* Affidavit of Joseph Beneducci, Sr. [ECF No. 96-1] ("Beneducci Aff."); Affidavit of Brian E. Raftery [ECF No. 96-2] ("Raftery Aff.").

As its title suggests, the Trust contemplates the holding of property for the benefit of Joseph Beneducci Sr.'s children.  *See* Beneducci Family Legacy Trust §§ 2, 3.A, 3.B [ECF No. 95-2] ("Trust").  The Trust appoints *two* trustees—Joseph Beneducci Sr. ("Beneducci"), a citizen of

---

[1] Indeed, the affidavit submitted by Joseph Beneducci Sr. is ripe with similarly irrelevant information about various connections to Florida.  *See* Affidavit of Joseph Beneducci, Sr. ¶ 9 (situs of Trust is designated to Florida); ¶ 11 (primary residence of Beneducci's sons is Florida) [ECF No. 96-1].

[2] The Court also directed Plaintiff to show cause why it should not be sanctioned for its misrepresentations to the Court, and its many-months failure to correct such misrepresentations.  *See* Order to Show Cause [ECF No. 99].

Florida, and Brian E. Raftery, a citizen of New Jersey.  *See, e.g.*, Trust; Beneducci Family Legacy Trust Change of Situs and Governing Law [ECF No. 95-3]; Article 4 Trust Under Beneducci Family Legacy Trust [ECF No. 95-4]; *see also* Beneducci Aff. ¶ 8; Raftery Aff. ¶ 2.[3]  Yet, Plaintiff asks the Court to ignore the citizenship of Raftery and consider *only* the citizenship of Beneducci for purposes of diversity jurisdiction.  *See* Response to Order to Show Cause 10–11 [ECF No. 96] ("Pl. Resp.").  Plaintiff contends that ignoring Raftery's citizenship is warranted because Beneducci has "complete and full authority to bind the trust and no other trustee has any liability or responsibility for making such decisions."  *See* Pl. Resp. 4.

Defendants disagree, arguing that Raftery's New Jersey citizenship and status as a trustee "destroys diversity jurisdiction."  Def. Opp. 1.  Specifically, Defendants contend that the Trust "takes the citizenship of its trustees," meaning that the Trust—like Defendants—is a citizen of New Jersey for purposes of assessing diversity jurisdiction.  Def. Opp. 1.

The Court heard oral argument from both parties at the August 9, 2023 conference.  At their request, both parties filed supplemental submissions after oral argument.  *See* Response to Order to Show Cause [ECF No. 103] ("Pl. Reply"); Defendant's Supplemental Submission [ECF No. 105].  In reaching the following conclusions, the Court has considered all of the submissions filed by both parties.

## LEGAL STANDARD

Subject matter jurisdiction "is an unwaivable *sine qua non* for the exercise of federal judicial power."  *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990).

---

[3] There actually appear to be two Beneducci Family Trusts: Family Legacy Trust I and Family Legacy Trust II. Plaintiff's briefing to this Court suggests (but does not clearly state) that the Trust at issue is Family Legacy Trust I. In any event, Brian Raftery is a trustee of both Family Legacy Trust I and Family Legacy Trust II.

Accordingly, "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Under 28 U.S.C. § 1332, the Court has jurisdiction over controversies of "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Jurisdiction under § 1332 requires "complete diversity," meaning that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014). Plaintiff, as the party seeking to invoke jurisdiction under 28 U.S.C. § 1332, bears "[t]he burden of persuasion for establishing diversity jurisdiction." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) ("[T]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

For purposes of § 1332, a corporation is a citizen of its state of incorporation and its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The citizenship of an LLC, however, "is determined not by the LLC's place of incorporation or principal place of business, but by the citizenship of each member of the LLC." *Agility Logistics Corp. v. Elegant USA, LLC*, No. 09-CV-4719, 2009 WL 3094898, at *1 (S.D.N.Y. Sept. 25, 2009) (citing *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96 (1990)). If any members of an LLC "are themselves non-corporate entities, then a plaintiff must allege the identity and citizenship of their members, proceeding up the chain of ownership until it has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC." *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020).

## DISCUSSION

To meet its burden of demonstrating subject matter jurisdiction, Plaintiff must show complete diversity of citizenship between the parties. The parties agree that Defendants are citizens of New York and New Jersey. *See* PJPO 2–3. For complete diversity to exist, then, the Plaintiff LLC—whose *sole* member is the Trust—may *not* be a citizen of New York or New Jersey.

The problem for Plaintiff is that one of the two trustees, Raftery, is a New Jersey resident. The citizenship of a trust turns on whether the trust at issue is a traditional trust or a business trust. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378 (2016); *see also SPV-LS, LLC v. Bergman*, No. 15-CV-6231, 2019 WL 2257244, at *16 (E.D.N.Y. Jan. 14, 2019), *report and recommendation adopted*, 2019 WL 1552914 (E.D.N.Y. Apr. 10, 2019). Traditional trusts are those "established by will or inter vivo transfer [that] have vested and contingent beneficiaries with no present ownership interest in trust property and no power over the trusts' administration, disbursements or investments." *See SPV-LS*, 2019 WL 2257244, at *16. Business trusts, by contrast, are unincorporated organizations created for profit. *Id.* The Second Circuit has held that "for . . . traditional trusts, it is the *citizenship of the trustees* holding the legal right to sue on behalf of the trusts, not that of beneficiaries, that is relevant to jurisdiction." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 730 (2d Cir. 2017) (emphasis added).

Plaintiff does not dispute that the Trust here is a traditional trust. *See* Pl. Resp. 9–10 (noting that "when a trustee of *a traditional trust* files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." (emphasis added) (quotation marks omitted)). Indeed, the documents provided by Plaintiff make clear that the Trust contemplates a transfer of wealth by Beneducci to his children, who currently have "no present ownership interest in [the] trust property and no power over the trusts' administration, disbursements or investments." *SPV-LS*, 2019 WL

6

2257244, at *16; *see* Trust §§ 2, 3.A, 3.B.  Nor does Plaintiff dispute that the citizenship of the trustees is the relevant consideration for purposes of § 1332.  *See* Pl. Resp. 9–11.[4]

Instead, Plaintiff urges this Court to disregard the citizenship of Raftery—indisputably one of the two trustees—and to consider *only* the citizenship of the other trustee, Beneducci.  *See* Pl. Resp. 10–11.  But this suggestion is entirely unsupported by either the Trust documents or legal authority.  First, despite Plaintiff's best efforts to depict Raftery as a powerless, "naked trustee," *see* Pl. Resp. 11, the Trust documents clearly show that Raftery holds considerable power—including the power to sue or be sued on behalf of the Trust.  *See* Trust § 16(A)(20).  In fact, the Trust enumerates a non-exhaustive list of thirty-five powers that provides *both* trustees with "*all the powers, authorities and discretions conferred upon fiduciaries by the laws of the State of New Jersey.*"  *See* Trust §§ Preamble (naming both Beneducci and Raftery as "Trustees"); 16(A) (outlining 35 distinct "Trustee Powers").  In addition to the right to sue or be sued on behalf of the Trust, that non-exhaustive list empowers the trustees to retain any property of any nature, *see* Trust § 16(A)(1), to form, or participate in corporations, partnerships, limited liability companies or other business entities, *see* Trust § 16(A)(7), and  "generally, *to do any other act* and exercise *any other power* that might be done legally," *see* Trust § 16(A)(35) (emphasis added).  Elsewhere, the Trust refers repeatedly to powers that may be accomplished by "any one of the Trustees."  Trust §§ 4(B), 5(A)(1), 5(A)(2), 5(B)(1), 5(B)(3), 5(C)(1), 5(C)(2).  In addition, the Trust explicitly grants some powers to Raftery *alone*.  *See, e.g.*, Trust § 4(E), (G).

In its supplemental submission, Plaintiff again argues that Beneducci has the real power as trustee and directs the Court to Section 15(A), providing that Beneducci "shall make all investment decisions" during "such time as [Beneducci] shall be a Trustee."  Trust § 15(A); *see* Pl. Reply.

---

[4] Plaintiff confirmed at oral argument that it does not dispute either of these issues.

7

Section 21(A)(7), in turn, defines "all investment decisions" to include "all decisions with respect to any interest in any entity" and "all decisions with respect to the confirmation, ratification, consent to, and agreement to any action taken by any such entity." Trust § 21(A)(7)(e), (f). "Entity" is an undefined term. Even assuming the undefined "entity" includes Altruis LLC, Section 15(A) limits Raftery's powers over "all investment decisions" for *only as long as* Beneducci remains a Trustee. Moreover, even while Beneducci serves as a trustee, Raftery remains a trustee with respect to all property of the Trust, *see* Trust § 15(A), and may still bind the Trust by, among other things, signing contracts, leases, assignments, deeds, and mortgages, *see* Trust § 16(A)(1), (4), (5).[5]

In any event, Plaintiff provides no authority supporting its argument that Raftery's purported relative power (or lack thereof) as a Trustee is relevant *in any way* when determining the citizenship of the Trust. Plaintiff cites *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), for the proposition that only the citizenship of a trustee with "customary powers to hold, manage, and dispose of assets for the benefit of others" may be considered. *Id.* at 464; Pl. Mem. 11. As described, Raftery *has* such powers. See Trust §§ 3, 4, 5, 6, 16(A). And "*Navarro* had nothing to do with the citizenship of [a] 'trust.'" *Americold Realty*, 577 U.S. at 382. Indeed, the question at issue in *Navarro* was whether the trustees could "invoke the diversity jurisdiction of the federal courts on the basis of *their own* citizenship, rather than that of the trust's beneficial shareholders." 446 U.S. at 458 (emphasis added). The Supreme Court concluded that the trustees could "sue in their own right" because they were "active trustees whose control over the assets . . .

---

[5] Pointing to the affidavits submitted by Beneducci and Raftery, Plaintiff implored the Court at oral argument to find Raftery a mere nominal trustee. But those assertions are inadmissible hearsay and cannot, in any event, overcome the clear text of the Trust, which designates numerous powers to Raftery. Moreover, even if Raftery's "*involvement* as a co-Trustee [were] nominal and ministerial in nature," Raftery Aff. ¶ 11 (emphasis added), that is immaterial to the question of whether Raftery is a named trustee who holds significant powers, including the legal right to sue on behalf of the Trust. *See Raymond Loubier*, 858 F.3d at 730.

[was] real and substantial." *Id.* at 465; *see also Quantlab Fin., LLC, Quantlab Techs. Ltd. (BVI) v. Tower Rsch. Cap.*, LLC, 715 F. Supp. 2d 542, 547 (S.D.N.Y. 2010) ("*Navarro* . . . did not . . . directly address the issue of how to analyze the citizenship of a trust; [it] analyzed whether the plaintiffs . . . qualified as 'real parties to the controversy' whose citizenship alone was determinative for diversity jurisdiction purposes."). Moreover, several courts have rejected the exact proposition Plaintiff urges the Court to adopt here. *See, e.g.*, *Quantlab*, 715 F. Supp. 2d at 549 ("[A] rule that requires a court to analyze the functions and powers of a trustee in order to determine whether that trustee's citizenship should be considered for purposes of diversity jurisdiction would place a 'great and unnecessary burden' on the litigants and the court."); *Parler, LLC v. Amazon Web Servs., Inc.*, No. 2:21-CV-270, 2021 WL 4476918, at *7 (W.D. Wash. Sept. 30, 2021) (noting that, although the powers of the trustee were "limited," the court was "simply not in a position, even if it were inclined, to weigh the relative significance of these powers when determining the [t]rust's citizenship"). The Court is therefore not persuaded that Raftery's citizenship *may*—let alone *must*—be disregarded.[6]

The Court may not simply ignore the citizenship of Raftery at Plaintiff's behest. Because Raftery and Defendants are *both* citizens of New Jersey, Plaintiff has not met its burden of demonstrating that diversity jurisdiction exists in this case.

---

[6] Plaintiff repeatedly referenced Federal Rule of Civil Procedure 17 at oral argument, contending that Beneducci is the "real party in interest." However, Rule 17 does not appear relevant as Beneducci is not a party to this lawsuit. Moreover, the Supreme Court has held that although "there is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy, . . . the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 463 n.9. For instance, the Supreme Court explained that while "a labor union may file suit in its own name as a real party in interest under Rule 17(a)," it must still "rely upon the citizenship of each of its members" in order to "establish diversity." *Id.*

## **CONCLUSION**

This case is DISMISSED for lack of subject matter jurisdiction. The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Date:  **August 10, 2023**             **MARY KAY VYSKOCIL**
       **New York, NY**                **United States District Judge**